is case number 152089 United States v. Alexander Montoya Mr. Ravchak Thank you Judge Lynch and may it please the court. I'd like to reserve one minute for rebuttal if I may. A new trial is required in this case because the district court failed to give an entrapment instruction. The government misleads this court by applying the wrong standard in its brief and focusing solely on evidence that favors its position on the entrapment issue. As the court knows, the standard of review is different. It's whether the evidence viewed in the light most favorable to the defendant meets the modest burden and modest is quoted in many cases from this court, modest burden to raise the issue of entrapment. Here the defendant clearly met that burden of reduction on both inducement and predisposition. The district court's error was compounded because the government argued its position on entrapment in the opening for objection. It was also compounded by the government's disruption of the informant's Facebook account. How has it happened by that? By the argument in the opening? No, no. By the destruction of the Facebook account. I thought that our case law on spoliation of evidence said that you can't make a spoliation claim unless you have some proof that what was destroyed was material to the action or proof that the government was acting in bad faith, one or the other. Well, materiality, when talking about spoliation, and this is in a unique context, we're talking about spoliation as it goes to whether an entrapment instruction... No, no, I understand that, but there is nothing in the record that I've seen so far, maybe you can enlighten me, that will give anyone the vaguest idea of what might have been on that Facebook page. Well, and that's our point, that the communications... But our case law says that's not enough. Materiality is enough under the case law. Well, what's material? Unless there's something there that relates in some way to this case or to the dealings with the defense. In terms of inducement, the back and forth communications are highly relevant to the district judge's determination. And what is there to indicate that there are back and forth communications? The testimony of Mr. Rodriguez, who said he communicated with the defendant on Facebook. Yeah. And communicated with him about drug transactions. Right. And used Facebook in the context of this investigation. Right. That's what makes them material. But why wouldn't, if that communication took place, why wouldn't the defendant have them? Well, the defendant... If the communications are with the defendant, then I'm really struggling with how the spoliation plays out. Well, the defendant doesn't have them. How do we know that? There's nothing in the record that suggests that. Is there anything that suggests the opposite? No. So the record is silent on that? The record is silent as to that. And getting back to the relevance of the messages, you know, that's like saying the defendant was present at an interview when he didn't receive an interview report from the government. The defendant is absolutely entitled to have the government abide by its discovery obligations. Yeah. And back and forth communications with the defendant about a drug deal in the context of whether there's going to be an entrapment instruction or not, nothing could be more material. When you're talking about the plus factor on inducement... Yes. Is it enough to just say, I'm an addict, I want drugs? It seems like you could have a lot of entrapment defenses if that's sufficient to get you up to the plus factor. It depends on the peculiar circumstances of the case. In this particular case, they were friends. And it's not merely that I'm an addict and I'd like to use some heroin. It's that I'm dope sick. And that particular term has a particular relevance in the context of inducement. That is to say, I'm suffering physical withdrawal symptoms. I am in pain. And that, Your Honor, I would submit is enough by itself. There's more, but it would be enough in the context of a friendship and where the friend invokes his physical suffering of withdrawal symptoms. And the court can look to the Young case. The court can look to the cases we cited from the Second and Fifth Circuits, specifically Judge Friendly's opinion in the Riley case, the Fifth Circuit's opinion in Borkovich. And those cases establish, it seems to me, that it is enough of a plus factor in these particular circumstances. But beyond that, and the dilution of the Facebook account, we also have a failure to preserve phone records. There were clearly, if you look at the timeline, and I direct you to the appendix, if you look at the timeline of communications, these two individuals, Rodriguez, the informant, and Montoya, the defendant, were clearly communicating outside through another medium. We were entitled to a presumption, I submit, that the government's destruction of communications destroyed relevant communications to the entrapment issue. Electronic evidence is more and more relevant as criminal cases go forward. The government's mishandling of that evidence in this case was, in my view, beyond the pale. And one cannot simply have, as the agent testified here, an informant or corroborating witness delete communications with a criminal defendant and then say, well, I didn't realize, I didn't think we'd need it. That was reckless. And it should be considered so by this court. And that, on top of the appeal to physical withdrawal and dope sickness, if you will, was more than sufficient to get us an exception. Now, the government says, and the district court, if you read its comments, focused on the fact that, well, you didn't have a kind of repetition that you have, say, in some cases, such as Sherman. But, you know, Judge Sun, in your opinion and Rodriguez, you said and recognized that the entrapment can take place at an initial meeting and the inducement can take place at an initial meeting. I think your quote was, it sometimes said that no one is as devoted to a cause as a hard-won convert. So the fact, the government argues, this went on for some time after the initial purchase in August. But the fact remains that once an informant was told, you know, says I'm in physical pain, I need your help to a friend, that was sufficient to meet our burden of production, some evidence to give us the instruction. As to predisposition, I'd like to focus on the reports which were produced in the middle of trial after the case agent had testified by the government. The government debriefed Mr. Rodriguez for over four separate days about everything he knew about drug and gang activity in western Massachusetts. He identified in a neighborhood of 30 individuals who were either gang members or involved in drugs and never mentioned Mr. Montoya. So how does that show lack of predisposition on Montoya's part? That merely shows that Rodriguez, or at least forms the basis for an argument, that Rodriguez wasn't dealing with him or had no knowledge of his drug dealing during that period. But Rodriguez had knowledge of the movie in which Mr. Montoya was running. Yeah, but that knowledge didn't pretend to be exclusive knowledge. I don't see, I mean, I can see how you can use that as part of Montoya's defense, but I don't for the life of me see how it goes to show, to meet your entry level burden of showing lack of predisposition, particularly with a defendant who has a prior drug offense. But that was, the district court never got to the point of considering predisposition. It stopped at inducement. Good morning, your honors, and may I please have the court, Kelly Lawrence for the United States. Ms. Lawrence, can I ask you to start with the Facebook evidence? Yes, your honor. The record demonstrated, I think the testimony at trial, was that the cooperator communicated with the defendant two to three times on Facebook. I don't recall the testimony as saying he communicated with the defendant about a drug transaction. And as the agent testified at trial, he did advise the cooperator to delete his Facebook account when he was being relocated approximately, I think eight months after these transactions involving the defendant occurred. He was concerned for his safety that Facebook could be used to identify him and find him in his new location. At that time, the agent testified at trial, he was not aware that the defendant and the cooperator had had specific communications on Facebook, although he was aware that the cooperator had used Facebook as part of the investigation to befriend other targets of the investigation. So there was no bad faith or intentional attempt to destroy this evidence. That's what the testimony at trial was from the agent. But even if there was no bad faith, the question then comes, was there any likelihood that the communications that were destroyed were relevant to this case? Now you say that the testimony was that Rodriguez and the defendant communicated on Facebook two or three times. Unless there's some relationship that I don't know about, one would be hard-pressed to believe that they communicated about a trip to the ballet on Saturday night. Well, there was evidence that one of the communications was the cooperator congratulating the defendant on the birth of his child. So that would put it into the purely social category. But I think there are two points to this. One is perhaps a claim that there was intentional communication or intentional destruction of evidence, which I don't understand the appellant to be making that claim. There was intention. The government suggested the Facebook page be deleted, but the government had a perfectly logical reason not related to this case for doing it. Correct. But my point is I don't see the legal claim in this appeal as to truly asking for a reversal  or an evidentiary misconduct type claim. I see the claim as going to whether it should have been considered as a plus factor as to whether the entrapment instruction had been given. And as the evidence came in at trial, there's no basis to consider it as a plus factor when we have the agent saying he was unaware of the communications. The cooperator testifying, I might have communicated two or three times, but I don't recall what it was. And we also have other evidence in the case that would defeat or counsel the district court to find that there wasn't sufficient evidence of improper inducement and or a lack of predisposition. And the district court did find properly that there wasn't sufficient evidence of improper inducement. And even if it could consider the missing two or three communications, there was no evidence to suggest that those communications would have been of any different kind than the ones that were introduced between the cooperator and the defendant. And to that end, we had all of the text messages between the two individuals. We had several recorded calls. There was testimony at trial, but not all of the calls were recorded and that there could have been and were calls made between the two that were not captured and presented to the jury. Nevertheless, with the evidence that was before the jury and before the court in making its determination about whether to give the entrapment instruction, all that the defendant is really relying on here is that the cooperator testified that he was friends with the defendant and that he did tell him that he was dopesick in using and wanted to buy heroin. That's all that I see from the testimony that was presented to the jury. And in addition to that testimony, though, there are recorded calls where the defendant is expressing his interest in providing the heroin. We have calls showing no evidence of hesitation or reluctance to make those deals. And we also have calls that show that the defendant is actively engaged in drug trafficking at the time he's selling to the cooperator. And in light of that evidence, where we have a defendant who's selling three different types of heroin just to this defendant alone, he tells him at one point on the day following the first transaction when he says he inadvertently kept the extra ten bags of heroin, he says, I can't give you that kind I gave you because it's sold out. He also says in another call when he accuses him of setting him up that he was dealing with another customer who said he saw a bunch of cops around. I think the evidence is irrefutable that the defendant was engaged in drug trafficking at this time, which shows predisposition. So if there's no evidence of lack of predisposition, then as a matter of law the entrapment and destruction was properly refused. Does it make a difference as your brother says that the district court predicated its ruling on the other prong of entrapment, lack of improper inducement? No, and I'm not sure reading the transcript that the district court necessarily predicated its finding only on improper inducement or a lack thereof. The court had before it all of the government's predisposition evidence that it asked to introduce a trial if the court were to give the instruction. It had a conversation and the government presented the prior convictions of the defendant said it would recall the agent if necessary to testify about the defendant's prior drug dealing and gang activity and would also recall the cooperator to talk about the defendant and the cooperator's relationship in jail. So the government gave that evidence to the court. It did not go before the jury but it was within the court's consideration. The court did not make a specific ruling that it was relying on that evidence but it was certainly there and this court can rely on it on de novo review and make that determination. With regard to the late introduced debriefings of the cooperator as the government pointed out in its brief, the defendant did not request a continuance or a mistrial at the time that he received those debriefing reports in the middle of trial. That makes this court's review for plain error only even if it were reviewed for abuse of discretion. There was no abuse of discretion here in denying the new trial. The defendant did receive the debriefing reports prior to the cross-examination of both the agent and the cooperator. The debriefing reports were the main fact as the defendant argues on appeal is that they didn't mention the defendant. There was nothing more to be used. There was no other evidentiary value to those reports than simply the fact that they didn't mention the defendant and he used the reports effectively to elicit that information and to argue it in his closing. So we maintain that he cannot show that an earlier disclosure would have affected his trial strategy or the outcome of the trial in any way. If there are no further questions? The report wasn't turned over until mid-trial, but when the government became aware that there was an entrapment defense, did they at that point turn over or have there was an initial interview that didn't reference the defendant? As the government argued at trial, there was a lot of conversation and disclosure about when this defendant became a target. I believe if you look at the entire record of the disclosures that were made, the government I think reasonably believed or their support for its belief that it had made that information available. The idea that the cooperator hadn't identified the defendant as a target. However, at the most that kind of statement in response to the discovery request might have been appropriate. At the time the discovery request was made though, it was in the context of litigating and asking for discovery about the Facebook and call record communications and it was a very broad request that said any debriefings of the CW. And at that point the government thought that it had disclosed the relevant information regarding the cooperator and it wasn't until the specific request was made at trial and the government understood the purpose for which that information would be used that it handed it over. And what was the initial contact between the cooperating witness and the defendant in this case? As introduced at trial, it was when the defendant ran into the cooperator at a bus stop in Springfield on August 1st. Other evidence presented to the court indicated that they had known each other in jail years prior. That was sort of the basis of the friendship and that wasn't elicited before the jury. Thank you. I'd like to go back to the standard because again we're arguing and making weighing the evidence in a way the government was which is not appropriate given the determination that this court has to make. The court has to make a determination whether there was a production burden that was met. Whether there was some evidence and whether the production burden is met I believe the court has used the term can anything plausibly support the theory of the defense? Here the defendant was denied his theory of the defense after the government opened on it and he essentially crippled the case and took the case from the jury. The jury came back and asked what's the law on entrapment in this case? And when the jury came back and asked what's the law on entrapment the district court said you can't consider that. So the defendants only defense what he put forward was simply taken from him. Thank you. Thank you your honor. Thank you.